NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-40

AVALON BUILDING SYSTEMS, INC.

vs.

MARIA KULIOPULOUS & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendants, Maria Kuliopulous and White Sands Beach Club, Inc., own and operate a hotel in Truro.  After a fire destroyed nineteen rooms in 2014, the defendants sought to rebuild that portion of the hotel.  In 2015, Kuliopulous entered into an agreement with the plaintiff, Avalon Building Systems, Inc. (Avalon).  The agreement stated that Kuliopulous would pay Avalon $5,000 as a deposit "towards a new modular motel building" that Avalon would design, and that the parties

---

[1] White Sands Beach Club, Inc.  In the defendants' brief, Maria Kuliopulous's name is spelled "Maria Kuliopulos."  As is our custom, we spell her name as it was spelled in the complaint.

understood that Kuliopulous would "make a purchase of a modular home" from Avalon and "[f]ormal contracts" would follow.

In 2020, Avalon sued the defendants for breach of contract, quantum meruit, and violation of G. L. c. 93A, § 11. It alleged that it had worked "with the defendants on the project for over four (4) years" and that it "relied upon the many promises of the defendants . . . with the reasonable understanding and belief that the defendants would pay Avalon." The defendants counterclaimed on several grounds including violation of G. L. c. 93A, § 11.[2] Following a trial in Superior Court, the jury found in favor of Avalon on its breach of contract claim and c. 93A claim, but not on its claim for quantum meruit. The jury found in favor of the defendants on their c. 93A claim. In a posttrial memorandum and order, the judge tripled Avalon's damages under c. 93A and doubled the defendants' damages under c. 93A. The judge also awarded Avalon attorney's fees and costs under c. 93A. The defendants filed a motion for a new trial or alternatively remittitur and a motion for judgment notwithstanding the verdict, and the judge denied both motions. The defendants appeal from the judgments on jury verdicts and

---

[2] The judge dismissed the defendants' counterclaim for equitable estoppel and allowed Avalon's motion for a directed verdict on the defendants' counterclaims for intentional interference with business relations and trespass.

2

the judge's order denying their postjudgment motions.  We affirm.

Discussion.  1.  The jury's finding of a breach of contract.  The defendants contend that we should vacate the jury's verdict because "Avalon failed to establish a breach of contract,"[3] but that issue is not preserved for our review.  The judge denied the defendants' motion for judgment notwithstanding the verdict because they did not move for a directed verdict at trial.  See Mass. R. Civ. P. 50 (b), as amended, 428 Mass. 1402 (1998).  That failure also precludes them from challenging the jury's finding of a breach of contract on appeal.  See Hatton v. Meade, 23 Mass. App. Ct. 356, 361 (1987) ("[W]here a losing party has not moved for a directed verdict at the close of all the evidence, rule 50 [b] not only precludes [a] the granting to that party of a motion for judgment n.o.v., but also [b] appellate review of the sufficiency of the evidence to support the verdict").

---

[3] Ordinarily, whether a contract has been made is a question of fact for the jury. David J. Tierney, Jr., Inc. v. T. Wellington Carpets, Inc., 8 Mass. App. Ct. 237, 239 (1979).  The crux of the defendants' argument is that there was insufficient evidence of a contract between the parties "other than the Preliminary Agreement."  However, the verdict slip (to which the defendants did not object) asked the jury to decide only whether any contract existed (i.e., not a contract or contractual relationship beyond the agreement the parties indisputably entered into in 2015) and, if so, whether it was breached.

3

2.  Damages for breach of contract.  The defendants also appeal from the denial of their motion for a new trial or alternatively remittitur.  They maintain that the jury's award of $275,000 in damages for breach of contract was speculative, excessive, and not reasonably foreseeable.  "[T]he allowance of a motion for a new trial based upon an inadequate or excessive award of damages, and the direction of an addition or remittitur, rests in the sound discretion of the judge."  Baudanza v. Comcast of Mass. I, Inc., 454 Mass. 622, 630 (2009), quoting Blake v. Commissioner of Correction, 403 Mass. 764, 771 (1989).  We apply a "highly deferential" standard in assessing the evidence supporting a jury's award of damages and will overturn such an award only if it is "clearly excessive in relation to what the plaintiff's evidence ha[d] demonstrated damages to be."  Spinosa v. Tufts, 98 Mass. App. Ct. 1, 10 (2020), quoting Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 404, cert. denied sub nom. Globe Newspaper Co. v. Ayash, 546 U.S. 927 (2005).

The judge concluded that the jury's award of damages was supported by the evidence and consistent with the purposes of contract damages.  Paul Oliveira, the president of Avalon, testified that the entire project would have cost approximately $2 million and that Avalon's expected profit would have been

4

$275,000 to $280,000.  Although the defendants contend that Avalon should have at most recovered its expected profit of $113,866 on the price of $759,107 quoted in a proposed 2016 formal agreement, Oliveira testified that the quoted price "did not include the site, foundation, and decks, because they weren't designed yet."  Oliveira also testified that Avalon spent approximately $237,499 on labor and other costs for the project.  Considered in its totality, and with regard for the highly deferential standard of review, we conclude that this evidence was sufficient to allow the jury "to arrive at a reasonably approximate estimate of damages."  Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582, 609 (2007).  Accordingly, the judge acted within his discretion in denying the defendants' motion.  For the same reasons, we reject the defendants' argument that allowing the jury's award of damages to stand would result in "an unconscionable windfall to Avalon" or "miscarriage of justice."

3.  Award of c. 93A damages.  The defendants argue that the judge erred in denying their motion for remittitur because the $74,875 in damages the jury awarded to Avalon under c. 93A were duplicative of the breach of contract damages and that Avalon should have instead received only nominal damages.  It is true that "a breach of contract, even if intentional, does not in

5

itself amount to an unfair act or practice under G. L. c. 93A, § 11," H1 Lincoln, Inc. v. South Washington Street, LLC, 489 Mass. 1, 20 n.13 (2022), and that "[w]here injury is incurred because of conduct which comprises the elements of any common law . . . cause of action, and which is also a violation of [G. L. c. 93A], recovery of cumulative damages under multiple counts may not be allowed," Calimlim v. Foreign Car Ctr., Inc., 392 Mass. 228, 235 (1984). Here, the jury could have based their finding of a c. 93A violation and award of damages on conduct by the defendants distinct from their failure to pay Avalon for their work. As the judge explained in his posttrial memorandum and order, this conduct included the defendants' failure to inform Avalon about their inability to resolve zoning issues with the town and the resulting delay in permitting, their urging Avalon to perform services and incur expenses despite having been notified by the town's building commissioner that they would not meet the permitting deadline, their attempt to undermine Avalon by shopping for another modular building manufacturer while using Avalon's proprietary design, and their undisclosed negotiations with another builder after Avalon had worked on the project for several years. We agree with the judge that these facts provided a sufficient basis for the award of c. 93A damages. See Baudanza, 454 Mass. at 630.

4.  Multiple damages.  For similar reasons, we reject the defendants' claim that the judge erred in tripling the damages on Avalon's c. 93A claim to $224,625.  "Under G. L. c. 93A, § 11, [a plaintiff] is entitled to multiple (not more than treble and not less than double) damages if [the defendant] acted 'knowingly' or 'wilfully' in violation of [G. L. c. 93A, § 2]."  Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 475 (1991).  A judge's decision to award multiple damages for a violation of c. 93A is "based on the egregiousness of the defendant's conduct" (citation omitted).  Hug v. Gargano & Assocs., P.C., 76 Mass. App. Ct. 520, 527 (2010).  In reviewing an award of multiple damages under c. 93A, "we are bound by a judge's findings of fact that are supported by the evidence, including all inferences that may reasonably be drawn from the evidence."  Klairmont v. Gainsboro Rest., Inc., 465 Mass. 165, 183 (2013), quoting Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 420 (2005).  Here, the judge did not clearly err in finding that the defendants' unfair and deceptive conduct, which included "stringing along" Avalon for several years, see H1 Lincoln, Inc., 489 Mass. at 17-18, was egregious enough to warrant the imposition of multiple damages, see Klairmont, supra, at 183-184.

7

5.  Statute of frauds.  Claiming that "further enforcement of the Preliminary Agreement and any other contract found by the jury" was barred under the statute of frauds, the defendants contend that the judge erred in not instructing the jury on their statute of frauds defense.  We have previously held that whether a contract satisfies the statute of frauds is a question of law, not an issue of fact for a jury.  See Simon v. Simon, 35 Mass. App. Ct. 705, 709 (1994); Waltham Truck Equip. Corp. v. Massachusetts Equip. Co., 7 Mass. App. Ct. 580, 585 (1979) ("[T]he judge's refusal to allow the jury to make its own appraisal of the sufficiency of the writings involved here was proper").  In any event, even though the defendants requested a statute of frauds instruction, they did not object to the judge's refusal to give it.  See Mass. R. Civ. P. 51 (b), 365 Mass. 816 (1974) ("No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his

objection").  That failure precludes them from challenging the judge's decision now.[4]

>Judgments entered on May 5, 2023, affirmed.
>
>Order entered on May 30, 2023, denying postjudgment motions affirmed.
>
>By the Court (Ditkoff, Grant & Toone, JJ.[5]),

*Paul Little*

Clerk

Entered:  March 3, 2025.

---

[4] Avalon requests that we award attorney's fees and costs incurred in connection with this appeal.  See Yorke Mgmt. v. Castro, 406 Mass. 17, 19 (1989) ("The statutory provisions [of G. L. c. 93A] for a 'reasonable attorney's fee' would ring hollow if it did not necessarily include a fee for the appeal").  In accordance with the procedure set forth in Fabre v. Walton, 441 Mass. 9, 10-11 (2004), Avalon shall file a verified and itemized application for such fees and costs within fourteen days of the date of this decision, and the defendants will have fourteen days thereafter in which to file any opposition to the amounts requested.

[5] The panelists are listed in order of seniority.

9